Patricia P. Hollenbeck (SBN 121765)
DUANE MORRIS LLP
101 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619.744.2200
Facsimile: 619.744.2201
E-Mail: phollenbeck@duanemorris.com

and

Jon S. Swierzewski (MN 108017) (*pro hac vice* pending)
LARKIN HOFFMAN DALY & LINDREN, LTD.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, MN 55431
Telephone: 952.835.3800
Facsimile: 952.896.3333
E-Mail: jswierzewski@larkinhoffman.com

Attorneys for Defendant
Northern Lakes Data Corp.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRANSCORE, LP,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN LAKES DATA CORP., and DOES 1-10.<br><br>Defendants. | Case No.: 08-cv-717 LAB (RBB)<br><br>DEFENDANT'S POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION<br><br>Date: June 23, 2008<br>Time: 11:15 A.M.<br><br>Hon. Larry Alan Burns<br>Courtroom 9 |

Defendant Northern Lakes Data Corp. ("NLDC") respectfully requests this Court order Plaintiff TransCore, LP ("TransCore") to honor its written agreement to arbitrate. NLDC further requests the Court stay this action pending the completion of the arbitration, or in the alternative, dismiss this action as all of the claims asserted in the Complaint are subject to arbitration.

## I. FACTS

Defendant NLDC is a business that develops and provides software and software services. In September 2006, NLDC and TransCore entered into a Master Subcontract Agreement ("Agreement"), No. ZH810212, by which NLDC agreed that it would provide certain services on contracts entered into by TransCore with third parties. *See* Complaint, Exhibit A. The Agreement stated that the specific work to be done by NLDC for TransCore would be defined in one or more separate documents, entitled statement(s) of work ("SOW"). *Id.*, Exhibit A, p. 1. TransCore is claiming that it entered into an SOW with NLDC in September 2007, obligating NLDC to perform certain services in connection with a contract entered into between TransCore and the San Diego Association of Governments ("SANDAG"). *See* Complaint, ¶ 7. TransCore has brought this action based on alleged disagreements between TransCore and NLDC over the existence and enforceability of such an SOW. *See* Complaint ¶¶ 4-13 (First Cause of Action – Breach of Contract [Promissory Estoppel]).

In this action, TransCore has asked for two things. First, TransCore alleges that NLDC has breached the purported SANDAG SOW. *See* Complaint ¶¶ 4-13. Second, TransCore asks for a declaratory judgment that the Agreement applies to the purported SANDAG SOW. *See* Complaint ¶¶ 14-17 (Second Cause of Action – Declaratory Relief).

The Agreement contains a valid and binding arbitration provision which reads as follows:

> In the event of any controversy, claim or dispute ("dispute") arising under or relating to this Subcontract, the parties agree first to negotiate in good faith to reach a mutually agreeable resolution of such dispute within a reasonable period of time. If good faith negotiations are unsuccessful, TransCore and NLDC agree to resolve the dispute by arbitration in accordance with the JAMS Comprehensive Arbitration Rules and Procedures or JAMS Streamlined Arbitration Rules and Procedures then in effect. The arbitration shall take place in the Commonwealth of Pennsylvania. The arbitrator(s) shall be bound to follow the provisions of this Subcontract in resolving the dispute, and may not award punitive

> damages. The decision of the arbitrator(s) shall be final and binding on the parties, and any award of the arbitrator(s) may be entered or enforced in any court of competent jurisdiction.

*See* Complaint, Exhibit A, ¶ 9.

Plaintiff claims that "the matters set forth above [in the Complaint] are subject to the provisions of the Agreement and that the parties are obligated to resolve the dispute under the Agreement." Complaint, ¶16. Pursuant to the parties' Agreement, and specifically the agreement to arbitrate, NLDC has commenced arbitration proceedings against TransCore. *See* Declaration of Jon S. Swierzewski at ¶ 2.

## II. ARGUMENT

All of TransCore's claims are covered by a valid agreement to arbitrate. This Court should compel TransCore to honor that agreement and pursue its claims in the arbitration commenced by NLDC.

The Agreement is between two business entities, and relates specifically to actual or anticipated business transactions between them. As such, the Agreement is "a contract evidencing a transaction involving commerce," and is thus subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., (the "FAA"). *See* 9 U.S.C. § 2. Because the Agreement in this case falls within the definitions of the FAA, the provisions of and interpretations of that act apply to guide the Court in this matter. When a party moves to compel arbitration, the court must determine two things: (1) is there a valid agreement to arbitrate, and if there is, (2) does the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991). If the answer is affirmative on both questions, then the Court should enforce the arbitration agreement in accordance with its terms.

## III. THERE IS A VALID AGREEMENT TO ARBITRATE

The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." *See* FAA, 9 U.S.C. § 2. A party "aggrieved by the alleged ... refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *See* 9 U.S.C. § 4. By its terms, the Act

"leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 12387 (1985).

The FAA was enacted to encourage the arbitration of disputes. The strong federal policy favoring the arbitration of disputes and the preemptive force of the FAA have been repeatedly recognized by the Supreme Court of the United States. *See, e.g., Circuit City Stores v. Adams,* 532 U.S. 105 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985); *Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

## IV. PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION PROVISION

In this case, the valid and enforceable agreement to arbitrate clearly covers all of the claims asserted. As TransCore itself alleges in its Complaint, TransCore and NLDC entered into an agreement in September 2006 in which they agreed to arbitrate any "controversy, claim, or dispute" arising out of or related to that agreement. *See* Complaint, ¶¶ 5 and 15. The SOW that TransCore alleges was entered into with respect to the SANDAG project could only be an SOW created under the terms of the Agreement. Thus, TransCore cannot deny that its claims are covered by the parties' valid agreement to arbitrate.

In fact, TransCore goes even further. TransCore alleges that the specific dispute asserted in the Complaint is subject to its agreement to arbitrate. *See* Complaint ¶¶ 4-13, 16. Thus, the arbitration provision in the parties agreement "encompasses the dispute at issue." *Simula, supra,* 175 F.3d at 719-20. Plaintiff should be compelled to comply with its contractual obligation to

pursue its claims through arbitration. As NLDC has already commenced an arbitration in accordance with the Agreement, TransCore can easily assert it claims in that proceeding.

## V. CONCLUSION

Given the strong policy consideration underlying the FAA, and TransCore's own arguments that this entire dispute is subject to arbitration, the Court should compel TransCore to arbitrate, and should stay this matter pending the completion of arbitration. Given that there are no claims in this matter that are not subject to arbitration, the court may if it prefers, simply dismiss this matter. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal).

Date: April 25, 2008

**DUANE MORRIS, LLP**

By: /s/ Patricia P. Hollenbeck
Patricia P. Hollenbeck
Attorneys for Defendant,
Northern Lakes Data Corp.